[No. 9110. Department One. — August 27, 1886.]

WILLIAM HAYWARD, RESPONDENT, v. JOHN MANZER ET AL., APPELLANTS.

DEDICATION — FILING AND RECORDING MAP — ACCEPTANCE BY PUBLIC. — The filing and recording of a map of a tract of land, certain portions of which are delineated thereon as public streets, is a mere offer of dedication to the public of the streets, which does not become effectual as an irrevocable dedication until its acceptance by the public. Such an acceptance is ordinarily made manifest by a use on the part of the public for such a length of time as will be sufficient to evince its acceptance of the dedication as intended to be made.

ID. — DEDICATION OF STREET — NON-ACCEPTANCE FOR TWENTY YEARS. — The owner of a tract of land caused a map thereof to be made and recorded, on which the *locus in quo* was delineated as a public street. About one year afterwards, he conveyed a portion of the land, including the *locus in quo*, to the plaintiff, who immediately entered into the exclusive possession thereof, and so remained for a period of twenty years, claiming the same adversely to the whole world. During this time, the *locus in quo* had never been accepted or used by the public as a street. *Held*, that the land had never been dedicated as a public street.

APPEAL from a judgment of the Superior Court of Alameda County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Mastick, Belcher & Mastick*, for Appellants.

*Colin Campbell*, and *Tilden & Tilden*, for Respondent.

FOOTE, C. — The plaintiff, Hayward, brought an action to recover damages for trespass committed, as he alleged, by defendants, the marshal and board of trustees of the town of Hayward. He complained that they had un-

lawfully intruded upon his land, and torn down his fences, cut down and dug up his trees, and threw open his land for use as a public highway of that town.  He prayed for damages against them for the acts of trespass committed, and for a perpetual injunction to prevent them and their successors, etc., from the commission of further acts of that nature.

The cause was tried by the court without a jury.  The plaintiff obtained a judgment for fifty dollars and costs of action, and that the defendants be enjoined as prayed for.  From that and an order denying a new trial the defendants appealed.

The principal grounds for the reversal of the judgment and order relied on are, that the evidence was insufficient to justify the findings, but conceding it to have been sufficient, that upon such findings the judgment should have been for the defendants.

Upon a careful examination of the whole record, we are convinced that the findings are sustained by sufficient evidence.

They are as follows:—

"1.  That plaintiff and his grantors have been in possession of the land and premises in complaint described, claiming as owners and exercising acts of ownership over same, for about the period of twenty years.

"That for about four years prior to the commencement of this suit plaintiff inclosed the premises in dispute (as a portion of the larger tract owned by him for several years prior thereto) with a substantial picket fence.

"That two rows of trees were planted on said premises, —one by plaintiff's grantor, and one by plaintiff, — one of said rows of trees running near the line of plaintiff's fence.

"That said land was graded or filled in by plaintiff.

"2.  That in February, 1877, defendants tore down the fence upon said land and entered thereon for the pur-

pose of opening a street over it. That they did this under an order or resolution of the board of trustees of said town of Hayward, who claim that the paramount owner of the land had dedicated it to public use as a street of said town. That defendants John Manzer, Thomas A. Cunningham, Joseph Pimental, L. Livikin, and J. D. Austin constitute said board of trustees, and that defendant Horn is the marshal of said town, and that they were such officers at the time of the commencement of these proceedings. That in 1854, Guillermo Castro, claiming to be the owner of and being in possession of the rancho San Lorenzo, claiming same under a Mexican grant, caused to be made a map of that part of the rancho on which he laid out a town called San Lorenzo (now the town of Hayward). That said map was filed in the recorder's office of the county of Alameda.

" That upon this map a street called Castro Street was laid out and differently located from the location of a street called by the same name upon a second and subsequent map of said town. That some few sales were made under said map.

"4. That in 1856 said Castro caused a second and different map to be made and filed in the office of the recorder of said Alameda County of said town of San Lorenzo (now Hayward), altering the first plan of said town, and increasing the size of the blocks, and materially changing said town from what it was as delineated on said map of 1854, and upon which said last-named map of 1856 said Castro Street is located farther to the southwest than upon said map of 1854.

"That said Castro Street as laid down on said map of 1856 extended north 36° 24′ west through said town, and intersected a county road leading from San Leandro to the Mission of San José, south of a line on the said last-named map marked Pierce Street, and south of the land of plaintiff (in dispute). That south of the intersection of said Castro Street with the county road, Castro Street

was opened and used as a public road, but not to the north of said point.

"That said Castro Street as delineated on said map extended several blocks to the north of Pierce Street, but was not opened or used as aforesaid. That both said maps were filed in said recorder's office of Alameda County before the United States patent was acquired to said rancho San Lorenzo. That some sales were made under said map of 1856.

"5. That in 1856, Castro conveyed to plaintiff a portion of said rancho, lying north of Pierce Street and east of the county road, and including said Castro Street as delineated in said map of 1856, and included in such conveyance. That the county road was recognized as a boundary in said conveyance.

"6. That in 1858 and 1859, Castro mortgaged the remainder of his rancho, including that portion of it on which the town had been laid out. That said mortgages were foreclosed, and the mortgaged premises passed by judicial sales under decree of foreclosure to F. D. Atherton, who, as owner thereof, in 1862 made and filed a new map of the town of Hayward, on which said Castro Street as delineated is cut off at its intersection with the county road at the point hereinbefore mentioned, and that Castro Street as therein delineated does not embrace any part of the land in dispute. That a great many sales of land have been made by reference to said map.

"That said town of Hayward was incorporated in 1876, and that the board of trustees constituted under said incorporation accepted the alleged dedication under the map made and filed by Guillermo Castro in 1856.

"That there are various shade and ornamental trees on said land, which defendants have threatened and intend to cut down and destroy."

Before a person's land can be declared a public highway, it must be clearly proven that the same has been dedicated as such; and when it is undertaken by city au-

thorities to remove fences or improvements therefrom as a nuisance, they must affirmatively show such a dedication. (*Tate* v. *City of Sacramento,* 50 Cal. 242.)

When Guillermo Castro on the thirtieth day of September, 1856, within a year of the time of filing the map of 1856 of the town of San Lorenzo (now Hayward), deeded to the plaintiff a portion of Castro Street as laid down on said map, and bounded the tract of land which he thus conveyed by the county road on the west, the public had never accepted or used the part of the street including the land in ·dispute here as intended to be dedicated; and the town of Hayward had not then been incorporated. It is therefore evident that the deed above referred to was a complete revocation by Castro of his alleged dedication so far as it affected the public, howsoever it may have been as to the few persons who had purchased lots according to said map, whose rights in the premises we do not now determine.

By the filing of that map and having it recorded, Castro merely made an offer of dedication to the public of the streets which were shown by said map, which offer could not become effectual as an irrevocable dedication to the public use until its acceptance by the public. (*People* v. *Williams,* 64 Cal. 498–502; *San Francisco* v. *Canavan,* 42 Cal. 542–548; *San Francisco* v. *Calderwood,* 31 Cal. 589; Washburn on Easements, 132; *Harding* v. *Jasper,* 14 Cal. 647; *Child* v. *Chappel,* 9 N. Y. 257.)

Such acceptance is ordinarily made manifest by a use on the part of the public for such a length of time as will be sufficient to evince its acceptance of the dedication as intended to be made. (Washburn on Easements, 139, 140.)

It does not appear by the record that the public or the defendants, either before or after the deed of revocation made by Castro, ever used Castro Street at the place where it was originally designed to impinge upon the plaintiff's land; but it appears that by preference the public had always from its establishment used the county

road instead, that road having been about the year 1855 laid out as a public thoroughfare (somewhat identical with Castro Street) by the proper authorities of Alameda County.

Any right the public or the defendants may have had to use the land in dispute as part of Castro Street was never availed of; and as the plaintiff during the period of about twenty years had by himself or his grantors been in the exclusive possession of such part of said street, his right thereto had become paramount to that of the public or the town of Hayward.

In other words, the plaintiff by himself or his grantors claimed and held possession of the land in controversy for twenty years adverse to the whole world, and neither the public nor the defendants had at any time accepted or used that land as intended to be dedicated by Castro.

Hayward's effort, as disclosed by the record, is not to hold possession by means of the statute of limitations of a portion of what in fact had once been a public high-way.  It is to retain possession of land which in fact had never been accepted nor used as the public highway, and had been in his adverse possession for twenty years.

Such being the case, the proceedings on the part of the authorities of the town of Hayward to remove a nuisance from a public street was not authorized, since what they claimed to belong to a street had never been dedicated, used, or accepted as such.

The effort made to devote Hayward's land to the public use as a street, and the other trespasses committed thereon, in the manner attempted and partially accomplished, were contrary to law, and the judgment and order of the trial court should be affirmed.

SEARLS, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.