### EMILY J. MEADE V. THE CITY OF TOPEKA.
No. 14,821   (88 Pac. 574.)
#### SYLLABUS BY THE COURT.

1. HIGHWAYS—*Acquisition by Adverse User.* A grant of a tract of land for a public highway will be presumed when it is proved that the public has had the exclusive, uninterrupted possession and use thereof for such purpose for a period of time which would bar an action for the recovery of real estate.

2. —— *Burden of Proving Permissive Use.* Under such circumstances the burden of showing that the use was permissive is upon the owner of the title.

3. —— *Presumptive Grant—Limitation.* Such presumptive grant cannot be broader than the user; it is therefore confined to the tract actually used.

Error from Shawnee district court; ALSTON W. DANA, judge. Opinion filed January 5, 1907. Modified.

*Garver & Larimer*, for plaintiff in error.

*F. G. Drenning*, city attorney, and *W. C. Ralston*, assistant city attorney, for defendant in error.

The opinion of the court was delivered by

GREENE, J.: This was a suit to enjoin the city of Topeka from exercising municipal authority over a strip of land as a public highway. The trial court made special findings of fact and conclusions of law and rendered judgment thereon for the city. The plaintiff prosecutes this proceeding in error.

Fillmore and Clay streets in the city of Topeka are parallel and run north and south. Third street runs east and west, crossing Fillmore and Clay at right angles. In 1880 the plaintiff became the owner of a tract of land in Topeka township lying between Fillmore and Clay streets and north of Third street. When plaintiff became the owner of this land the tract adjoining it on the south had been platted as an addition to the city of Topeka and was called Nilsson's addition. The Nilsson plat dedicated a tract of land forty feet wide on the north thereof from Fillmore to Clay street to the public as a street, and designated it upon the plat as Third street. This tract became a well-defined and traveled road, and has continued to be so used. The land in controversy is a strip twelve feet and nine inches wide and 160 feet long, parallel with and adjoining Third street between Fillmore and Clay streets, and was a part of the plaintiff's land. It is now claimed by the city as a part of Third street. This is denied by the plaintiff, and she brought this suit perpetually to enjoin the city from exercising control over it.

The findings upon which the court rendered judgment, briefly stated, are as follow: When the plaintiff became the owner of the land it was enclosed. The fence on the south was exactly on the south line, and was in the center of Third street, extending west from the center of Fillmore to Clay. This fence became out of repair, and in 1884 J. M. Meade, the husband of the

Meade v. Topeka.

plaintiff, instructed workmen to build a new fence on the south line and inside the old fence. Without the knowledge of either the plaintiff or her husband the fence was placed twelve feet and nine inches inside the line, leaving this disputed strip apparently in Third street. Immediately thereafter, however, the plaintiff and her husband became informed that the fence had been moved north of the true line. After the fence had been built there were some posts and wires and scattering trees on the strip, which were removed by J. M. Meade, and he also caused shade and ornamental trees to be planted inside the new fence in line with trees previously set out on the east and west of the Meade land along the north side of Third street, which trees were apparently set out in contemplation of Third street being eighty feet wide. When this fence was built the plaintiff had no intention of dedicating this land to public use. In 1885 the township road overseer, under the direction of the township board, took possession of this strip of ground as the public highway, cut a ditch along and outside the fence and placed the dirt therefrom in the center of the street, and the public has had possession thereof ever since that date, grading and working it from time to time as the public demands required, and it has been traveled by the general public at all times thereafter as a part of the public highway, with the knowledge of the plaintiff and without objection to such use.

It is earnestly argued that the findings are not supported by the evidence. We have carefully examined the evidence and find that each finding is well supported. On some questions the testimony is conflicting, but there is positive evidence to support each material finding.

It is also contended that a judgment should not have been rendered against the plaintiff in view of the finding that it was not the intention of the plaintiff to dedicate this land to the public when she moved her fence inside of her property line in 1884. In order to con-

stitute a dedication there must be a clear intent, express or implied, to devote the grounds to the public use, and if the city were relying solely upon a dedication it could not recover in the absence of a positive showing of such intent. The city does not, however, rely solely upon a voluntary or intentional dedication, but in addition relies upon a prescriptive use, or what is termed in the modern law a presumptive grant, which the law will presume upon proof of an adverse, exclusive and uninterrupted possession and enjoyment for such a period of time as would bar an action for the recovery of real estate under the statute. (*Lehigh Valley R. R. Co. v. McFarlan*, 43 N. J. Law, 605; *Clement v. Bettle*, 65 N. J. Law, 675, 48 Atl. 567; *Pavey v. Vance et al.*, 56 Ohio St. 162, 46 N. E. 898.)

It is also argued that it is not shown that the possession claimed was not permissive. The character of the possession exercised by the public authorities in the present case makes a *prima facie* case against the plaintiff on this question. The land was used exclusively by the public, without objection by the owner, and the use was of such a character as to deprive the owner from exercising any right of ownership. It was not necessary that the public verbally assert a right to the land. Such claim of right may appear from the use itself. Under such circumstances the burden of showing that it was only permissive is upon the owner. (*Garrett v. Jackson*, 20 Pa. St. 331; *O'Daniel v. O'Daniel*, 88 Ky. 185, 10 S. W. 638; *Pavey v. Vance et al.*, 56 Ohio St. 162, 46 N. E. 898.)

The right having been acquired by user, the easement cannot be broader than the user. The city therefore acquired no rights to any of the plaintiff's land outside the line actually worked and traveled by the public. (1 Ell. Roads & Streets, 2d ed., § 174; *District of Columbia v. Robinson*, 180 U. S. 92, 21 Sup. Ct. 283, 45 L. Ed. 440.)

It does not appear from the evidence in this case, nor is there any exact finding, that the public actually oc-

cupied all of. that part of the land lying south of the fence. At least, there appears to be a pasture north of the ditch dug on the north side of the tract occupied by the public and between this ditch and the fence which the public did not use. As to that portion the public did not acquire a title by user.

The judgment of the court is not explicit as to the exact amount of the strip which was adjudged to have passed to the public by user, therefore the judgment is modified so as to give to the public only that portion of the tract in question which was actually used by it.