No. 37,849

THE CITY OF KINGMAN, *Appellant,* v. NETTIE WAGNER,
*Appellee.*

(213 P. 2d 979)

Opinion filed January 28, 1950.

*Chas. C. Calkin,* of Kingman, was on the briefs for the appellant.

*Fred Hurd,* of Kingman, was on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action by the city of Kingman for a declaratory judgment that the south thirty-five feet of block 13 in Brown's Addition to the city of Kingman had been dedicated as a public street, and for a judgment enjoining the defendant from interfering with the city's use. The trial court held that only a portion of the land was a public street and the city appeals.

In a preliminary way it may be said that Brown's Addition to the city of Kingman was platted prior to 1887. No copy of the plat nor any sketch is made a part of the abstract, but from the conclusions of fact, later mentioned, we learn that immediately east of Sugar street, which is apparently the western limits of Kingman, are

blocks numbered 13 and 14 which are not divided into lots, and which blocks are not intersected by a platted east and west street; that to the east are other blocks, divided into lots, the blocks being separated by north and south streets and by east and west streets. These east and west streets are seventy feet wide, and Avenue G, if extended west, would include the south thirty-five feet of block 13 and the north thirty-five feet of Block 14. Nettie Wagner, who owns block 13, is the defendant. The owner or owners of block 14 were not made parties and their names are not disclosed by the record as abstracted.

In its petition the city alleged that for more than fifteen years Avenue G as extended across the south end of block 13 and the north end of block 14 had been used as a public street and that the predecessors in title of Nettie Wagner had dedicated the south end of Block 13 as a public highway; that such owner of block 13 had constructed his house at a point north of the extended street line and constructed a fence and set out shrubbery recognizing Avenue ·G as extended as a public highway, those acts being done over fifteen years ago, and the situation thus created had continued down to the present time, and that the public had accepted and used the highway; that Avenue G constituted a main entrance to the city from the north and west and had been used by the public, and that a rural carrier mail route was established and maintained over it until the street was obstructed by the defendant.

In her answer the defendant denied generally and alleged she bought block 13 in 1932; that there had been travel across the south end of the block; that she had planted shrubbery south of the extended north line of Avenue G in contemplation of making a private parking place for her own convenience. She also pleaded a willingness to have Avenue G extended its full width of seventy feet, if the city would properly proceed by exercise of its power of eminent domain or by purchase, but she refused to extend Avenue G at a width of thirty-five feet all on the south side of block 13. The city's reply denied new matter, and alleged matter which we need not detail.

The trial court made conclusions of fact and of law. The conclusions of fact cover the statement above made as to the locations involved and also,

"4. For a long number of years, and at least as early as 1904, travel upon Avenue G has continued on west over and across Blocks 13 and 14 to Sugar Street, and more or less travel from Sugar Street has entered upon Avenue G over said 2 blocks, and such travel has given an appearance of extending

Avenue G on west to Sugar Street; with, however, no well-defined boundaries of said street."

"8. While Avenue G as extended across Blocks 13 and 14 has been traveled and used for upwards of 50 years, the travel and use has not covered the entire 70 feet, but has been largely in the center thereof."

The trial court also found that prior to 1904 a residence facing south and east had been built about the center of block 13; that defendant acquired that block in 1932 and had set out walnut trees and shrubbery on a line about three feet south of the north line of Avenue G extended; that at the time she acquired the property a fence along the west line of block 13 extended possibly twenty feet south of the north line of Avenue G extended; that five or six years ago, and while defendant and her family were gone, the city had done some grading of the strip, the extent not being shown, and that it had dragged the road for a long number of years; that a rural mail route used the road from 1933 to 1949 and defendant had her mail box on the south side of the road; that the defendant did object to the city setting a light pole and laying some water mains in the extended seventy-foot street and the city desisted; that in February, 1949, the defendant caused a fence to be placed across Avenue G stopping travel thereon, and this action was commenced.

"11. The Court finds that a portion of Avenue G, extended west over and across Blocks 13 and 14 of Brown's Addition to the City of Kingman, has been traveled and used by the public generally, openly and adversely under claim of right, for a period of more than 45 years, and that the portion of such extension so traveled and used is as follows: Commencing at a point on the east line of Block 13 seventeen feet south of the Ablard stake, thence south for a width of twenty-eight feet, and thence west by south twenty-eight feet wide across Blocks 13 and 14 to the east line of Sugar Street, where the north line of said traveled portion is twenty-four feet south of the Ablard stake." (The Ablard stake is at the southwest corner of Block 12 and marks the north line of Avenue G.)

"12. Defendant has always claimed all of Block 13, and has at times orally denied any right of travel over the same. However, while a witness in this case, defendant expressed a desire for a street 70 feet in width and has offered to donate more than 35 feet off the south end of Block 13 for such a street.

"13. While the City claims there is no controversy with the owner of Block 14 relative to an extension of Avenue G over it, there is some evidence that such owner claims some part of Avenue G extended, and has recently built a home very close to or actually on the south line of Avenue G extended."

As a matter of law the trial court concluded:

"1. That a street or roadway by prescription exists over and across the south side of Block 13 in Brown's Addition to the City of Kingman, Kansas, and that

said street or roadway is 28 feet wide as described and outlined in the Findings of Fact hereinbefore set forth, and that no part of said Block 13 extends south of said street or roadway.

"2. That a declaratory judgment should be entered declaring that all of such part of said street or roadway as is included within said Block 13 is a public street and roadway by prescription."

And that defendant should be restrained from interfering with or obstructing the said street or roadway, and that judgment should be entered accordingly.

The city then filed its motion, not set out in the abstract, but apparently asking the trial court to substitute for its conclusions of law, others to the effect there had been a dedication of the street south of the walnut trees and that Nettie Wagner was estopped from contending otherwise, and for a declaratory judgment that all that portion of block 13 south of the row of trees was a public street.

The trial court denied the foregoing motion, and thereafter rendered judgment on the conclusions previously made using a description of the land embraced in the street differing from that used in its conclusion of fact No. 11, but which we suppose covers the same land as no contention to the contrary is made.

The city's motion for a new trial was denied, and in due time it appealed. Its specifications of error cover three general propositions: (1) That the acts of the predecessors in title of the appellee constituted a dedication of the south end of block 13 as a westward extension of Avenue G; (2) that the conduct of appellee constituted a dedication, or that her acts and conduct after she acquired the title precluded and estopped her from denying that her predecessors in title had made such a dedication; and (3) that even if it be determined there was no dedication, the prescriptive rights of the city arising from user, cover a strip wider than that found by the trial court and to the same extent as that covered by the claimed dedication.

Before discussing the first proposition we note appellant's statement there is not much uncertainty as to what constitutes a dedication, but that the trial court had followed our decision in *Meade v. Topeka*, 75 Kan. 61, 88 Pac. 574, which held that under prescriptive right the interest of the public was confined to the tract actually used, and that it is appellant's purpose to point out that the trial court should have found the public right resulted from dedication which would cover the entire width of the street, and on that basis

our attention is directed not only to definitions of dedication but to an extended discussion of the facts stated in such manner as to support appellant's contention. We are not free to so treat the matter. In its abstract the appellant set forth the findings of fact made, but none of the evidence, and so far as the record discloses, its only complaint in the trial court was that the trial court did not make conclusions of law in its favor. We must accept all of the findings of fact as made by the trial court and not merely those which might be said show that approximately the south thirty-five feet of block 13 had been dedicated as a street.

## I

An extended discussion of what constitutes a dedication and how lands may be dedicated seems unnecessary. On the subject generally see 26 C. J. S. (Dedication), p. 47, *et seq.*, and 16 Am. Jur. (Dedication), p. 345, *et seq.* For our purposes it may be said that dedication is the devotion of land to a public purpose by the unequivocal act of the owner manifesting the intention that it shall be used for such public purpose, and that his intention may be evidenced by his specific act as where he files a plat, or it may be inferred from his acts and declarations. The dedication may be established in any way by which the intent of the dedicator may be shown, even by estoppel on the part of the owner of the land. See *Kansas City v. Burke*, 92 Kan. 531, 533, 141 Pac. 562, and cases cited, and *Kasper v. Miller*, 159 Kan. 488, 498, 156 P. 2d 550, and cases cited.

In the instant case there is no contention there was a dedication by specific act. If there was any dedication it was one to be inferred from acts and conduct of the owner that manifested an intention to devote the land to public use as a street. Insofar as predecessors in title of the appellee are concerned, it is true they built a house facing south and east, but any inference that they intended any dedication of the land on the south end of the block as a street is outweighed by the fact that on the west their fence extended twenty feet south of the east and west line the city contends marks the north line of the street as extended west. There is no other finding from which dedication by the former owners may be inferred.

## II

Insofar as the appellee is concerned, the appellee planted trees and shrubs in what the city contends is the street, she resisted the

city's efforts to improve the street to the width contended for by it, and if there was any evidence from which an inference of dedication may be drawn against her, it is not included in the abstract nor in the findings of fact made by the trial court. Appellant's contention that appellee is estopped to deny there had been a dedication is predicated on the location of the house; that she set out trees and shrubbery; that the entrance has been from the south and not from the east or west, and from her statement that she would not object if the city opened the street for its full width of seventy feet. The trial court refused to find that those facts estopped appellee from denying there had been a dedication. Without further discussion, we think its refusal to so find was proper.

## III

Appellant states that in view of our decision in *Meade v. Topeka,* supra, the trial court felt impelled to limit the width of the street to that part actually traveled, and that it erred in so doing.

In the last cited case may be found an extended statement of facts to which reference is made. On the facts found by the trial court, this court held that the city's right having been acquired by user, its easement could be no broader and that it acquired no right to any land outside the line actually worked and traveled, and it was held:

"A grant of a tract of land for a public highway will be presumed when it is proved that the public has had the exclusive, uninterrupted possession and use thereof for such purpose for a period of time which would bar an action for the recovery of real estate.

"Under such circumstances the burden of showing that the use was permissive is upon the owner of the title.

"Such presumptive grant cannot be broader than the user; it is therefore confined to the tract actually used." (Syl. ¶ 1, 2, 3.)

Appellant says that the rule of the above case was materially weakened by our holding in *Carlson v. Allen,* 90 Kan. 457, 135 Pac. 669. In the last case the plaintiff erected a fence on what he asserted was the line between his land and a public highway. The fence was torn down by the township trustee, and suit followed. The plaintiff contended the road was a certain width by reason of statutory provisions. The defendants relied upon evidence that a former owner had set out and maintained for many years a hedge fence intended to mark the line of the highway. It was held that the evidence was sufficient to support the trial court's judgment, because it justified

a finding that assuming the statutory proceedings had resulted in a road of but forty feet in width, a wider road was created by dedication and acceptance, or prescription. It was held:

"Where the owner of land bordering upon a highway, the legal width of which is forty feet, sets out a hedge, intending to mark the line so as to show a greater width, and the strip so marked is used as a road by the public for fifteen years, a highway of the width indicated results, notwithstanding the hedge is not maintained throughout the entire distance for all of that time." (Syl. ¶ 2.)

In our opinion the last mentioned case is clearly distinguishable from *Meade v. Topeka.*

Appellant also directs attention to 13 R. C. L. 58, and to *Whitesides v. Green,* 13 Utah 341, 57 A. S. R. 740, where there is language supporting a statement that a highway acquired by user is not limited to the width actually used, but carries with it such width as is reasonably necessary for the public easement of travel, and the width must be determined from a consideration of the facts and circumstances peculiar to the case. Even though we accept that as a rule to be applied, we cannot say the trial court erred. It heard the evidence and made findings which are not attacked. The particular road has been used for over forty-five years, and the trial court concluded that the portion "traveled and used" was twenty-eight feet wide. If the trial court in determining that width did not take into consideration the facts and circumstances peculiar to the case, it has not been made to appear.

It has not been made to appear that the trial court erred in its judgment and that judgment is affirmed.