TOWN OF NEWPORT, Petitioner,

v.

Ambrose BREWER d/b/a Ambrose Brewer Grading Contractor, Respondent.

Supreme Court of Tennessee.

June 5, 1978.

Roy T. Campbell, Jr., Newport, for petitioner; Campbell & Hooper, Newport, of counsel.

Ralph H. Noe, Jr., Morristown, for respondent; Noe & Hinsley, Morristown, of counsel.

## OPINION

BROCK, Justice.

The Town of Newport sues the defendant, Ambrose Brewer, for damages for injuries to the town's streets alleged to have resulted from the negligence of the defendant in operating a fleet of large heavy dump trucks over its streets, the defendant well knowing that his trucks were destroying the pavement. The trial court heard the case without a jury and awarded damages in the sum of $3,000.00. However, upon appeal, the Court of Appeals reversed the judgment of the trial court and dismissed the plaintiff's action, holding that the evidence did not show such an unreasonable use of the streets as would subject the defendant to liability for injury thereto. We granted the petition for certiorari filed by the Town of Newport.

The complaint alleges that the defendant is a grading contractor and that during the spring and summer months of 1975 he employed his fleet of large dump trucks to transport heavy loads of earth along a route over three streets of a residential area, Freeman Street, Woodlawn Avenue and Templin Street, between an excavation site and the site of the construction of a new vocational school; that these heavily loaded trucks destroyed the pavement of the streets, resulting in damages to the plaintiff in the sum of $5,418.00. Plaintiff alleges that the streets were narrow city streets which were not designed or constructed for the use of heavily loaded trucks but were designed for use only as residential streets and for traffic consisting of light weight vehicles. The gist of the complaint is in this allegation:

> "Plaintiff alleges that the defendant knew or should have known that the use of heavy trucks with heavy loads would seriously weaken or damage said streets and the use of said trucks by the defendant was negligence which was the direct and proximate cause of the damages to said streets."

The answer of the defendant denies each of the material allegations of the complaint.

The evidence shows that the streets in question were in a residential area of the town, that the pavement consisted of asphalt "hot mix" of a thickness of two inches laid on top of a minimum base and was not designed or intended to accommodate heavily loaded vehicles such as the trucks employed by the defendant in this case. Nevertheless, the defendant employed five to seven large dump trucks weighing, when loaded, from 15 to 22 tons, to haul large loads of earth from an excavation site

through a residential neighborhood to a construction site in another part of town; that these trucks traversed the same three streets repeatedly, eight hours a day, five and one-half days per week, for a period of approximately eight weeks. It is undisputed that this use of the streets by the defendant's vehicles caused extensive damage thereto, resulting in large portions of the pavement being destroyed. Moreover, it was known to the defendant and his employees from the very beginning of the project that this use of these streets was destroying them. Thus, the defendant Brewer testified:

"Q. And Mr. Brewer did you get any complaints while you were carrying on your operation out there about spilling dirt on the street out there and tearing up the street?

"A. Not to my knowledge, spilling no dirt on the street, but I knew it was tearing up the street.

"Q. You did know it was tearing up the street?

"A. Yes, I knew it was breaking the street.

"Q. And in spite of the fact that you knew that you went right ahead and completed your contract didn't you?

"A. Yes.

"Q. And is it a fact, Mr. Brewer—is it a fair statement that both of those, two sections, of street we are talking about was just almost___

"A. Well, one place down there was.

"Q. As a matter of fact, it was so bad one man testified you would almost drag your car?

"A. No, it never did get that bad.

"Q. But—the surface of it was torn all to pieces?

"A. It was torn up because the City never put no base under it when they put the top down."

■ We agree with the conclusion of the trial court that the evidence establishes negligence on the part of the defendant, in that, he subjected the streets in question to an unreasonable and extraordinary use, resulting in substantial injury thereto, although he was well aware that such use of the streets was destroying them. See Commonwealth, Dept. of Highways v. Pine Coal Co., Ky., 414 S.W.2d 134 (1967); Lincoln County v. Bruesch, 197 Or. 571, 254 P.2d 690 (1953); Annot., 5 A.L.R. 768 (1920); Annot., 53 A.L.R.3d 1035 (1973).

The principles of law governing liability for injuries to highways, streets or bridges are well stated in 40 Am.Jur.2d Highways, Streets, and Bridges § 605 at 82–83 (1968) as follows:

"It is elementary that persons using a highway, street, or bridge for the purpose of travel or transportation by the ordinary methods, in a reasonable manner, and to a reasonable extent, are not liable for the natural wear and tear of the way resulting from such use. Liability may result, however, from a wrongful use of the way which causes substantial injury thereto. There is no absolute right on the part of any person to use the way in an unreasonable manner so that the way may be injured and rendered impassable. The public authority has such an interest in the highways, streets, or bridges which it is its duty to repair and keep in order, as will give it a right of action against one who makes such repairs necessary by a wrongful, negligent, or unreasonable use of the way, notwithstanding the existence of a remedy against such persons by indictment or by proceedings to recover a statutory fine or penalty."

We concur in these rules and principles.

■ The Court of Appeals relied upon the decision of this Court in Sumner County v. Interurban Transp. Co., 141 Tenn. 493, 213 S.W. 412 (1918). In that case the county sought to enjoin the defendant transportation company from using trucks upon the roads of the county. The court held that, absent legislation imposing weight restrictions on motor vehicles using the highways, the county could not interfere with the use by the defendant transportation company of its heavy trucks despite the fact that the roads of the county were being materially

damaged by the trucks; and that there could be no recovery from the defendant for excessive use of the roads, there being no legislative enactment proscribing excessive use.[1] The court was of the opinion that there could be no recovery for damage to public roads in the absence of a showing that the use by the defendant was unreasonable, and the court employed a very narrow test for reasonableness of use, one that we regard as too narrow for the conditions of today. Thus, the court said:

"The fact that the transportation company has used vehicles heavier than customary does not give the [county] court, or any one else, an action against it for such use. . . .

\* &ast; &ast; &ast; &ast; &ast;

"It must have been more than the weight of the vehicles and their loads, and must relate to the manner of the use, either in the management of the vehicles, so as to carelessly operate them upon the roads, or the reckless driving of the vehicle by the motorman." 141 Tenn. at 500–01, 213 S.W. at 414.

To the extent that the decision in the *Sumner County* case is in conflict with the conclusions we reach today, it is no longer authority. The knowing subjection of a public street, highway or bridge to a use or load that it cannot accommodate and for which it was not designed by one who is aware that such use is inflicting substantial damage thereto, must, in our opinion, be regarded as an unreasonable and, therefore, negligent use for which the user may be held liable.

We reverse the judgment of the Court of Appeals and reinstate and affirm that of the trial court. This cause is remanded to the trial court for enforcement of the judgment.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.

---

1. See now, however, T.C.A., § 59–1101 et seq.